IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BETH MILETELLO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CASE NO. _____ |
| vs. | § | |
| | § | |
| MIDAMERICAN ENERGY SERVICES, LLC, | § | |
| | § | |
| Defendant. | § | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Beth Miletello ("Plaintiff" of "Ms. Miletello") by and through her attorneys, brings this action for damages and other legal equitable relief from violation of laws proscribing discrimination based on sex and for violations of the Equal Pay Act, stating the following as Plaintiff's claims against Defendant MidAmerican Energy Services, LLC ("Defendant" or "MES") and respectfully shows the Court as follows:

## INTRODUCTION

1.      This is an action brought by Plaintiff seeking damages from Defendant for acts of discrimination based on sex and for a declaratory judgment under Texas Uniform Declaratory Judgments Act. Defendant's acts of discrimination are in violation of the Civil Rights Act of 1871, as amended, 42 U.S.C. §1981 *et seq.*; and the 1991 Civil Rights Act, as amended, 42 U.S.C. 1981a et seq.; the 1991 Civil Rights Act, as amended, 42 U.S.C. 42 U.S.C. 1981a *et seq.*; and Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. Section 2000e, *et seq.* ("Title VII"), and 29 U.S.C. Section 206 ("Equal Pay Act").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; (iii) Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 2000e *et seq.*; (iv) 42 U.S.C. § 1981 *et seq.*, as amended and 42 U.S.C. § 1981a and 1983 *et seq.*, as amended; and (v) 29 U.S.C. § 206.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as Defendant maintains a place of business in Dallas County and it is the county where all or a substantial part of the events or omissions giving rise to the claim occurred.

## PARTIES

4. Plaintiff Beth Miletello is a person who has been aggrieved by Defendant's actions. She is and has been, at all relevant times, a female citizen of the United States and a resident of Denton County, Texas.

5. Defendant MidAmerican Energy Services, LLC is a Delaware limited liability company doing business in Texas and may be served through its registered agent, CT Corporation System, 1999 Bryan St., Ste 900, Dallas, Texas 75201.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 17, 2020, within 180 days of the initial adverse action. Plaintiff's Charge of Discrimination raised violations of Title VII and violations of the Equal Pay Act. Plaintiff received a Notice of Right to Sue from the EEOC on January 31, 2021.

This suit was filed within 90 days of Plaintiff's receipt of the Notice of Right to Sue. As such, all conditions precedent to the institution of this lawsuit have been fulfilled.

## FACTUAL ALLEGATIONS

7. MES is headquartered in Des Moines, Iowa, and has a small sales office located in Dallas, Texas.[1] MES provides deregulated commercial electricity in the Texas ERCOT market. According to MES's website:

> MidAmerican Energy Company is a rate-regulated utility that provides reliable, affordable and environmentally responsible energy to customers in Iowa, Illinois, South Dakota and Nebraska.
>
> With a diversified generation portfolio that includes wind, coal, natural gas, nuclear, hydro and biomass, MidAmerican Energy demonstrates environmental respect by proactively engaging in emissions-reduction projects. In fact, it's MidAmerican Energy's wind projects that not only foster economic growth, but have established the company as a recognized leader in the use and development of renewable energy.

8. MES hired Ms. Miletello as an employee on or around September 2017. At or around the same time Ms. Miletello was hired by MES, it required her to sign an Employment Confidentiality Agreement (the "Agreement"), a true and correct copy of which is attached hereto as Exhibit "A."

9. The Agreement states that it should be interpreted under the laws of the State of Iowa. However, the Agreement was signed by Ms. Miletello in Texas, and the entire time Ms. Miletello was employed by MES, she worked out of MES's Dallas County, Texas office. Ms. Miletello never resided or worked in Iowa at any time while she was employed by MES, nor did she ever provide any account sales services outside of Texas.

---

[1] The Electric Reliability Council of Texas ("ERCOT") operates the electric grid and manages the deregulated market for 75 percent of the state of Texas.

10. According to the Agreement, MES was to provide Ms. Miletello with access to certain confidential information owned by MES as consideration for her signing the Agreement. No such information was ever provided to Ms. Miletello either before or during her employment with MES.

11. The Agreement contained, among other things, the following restrictive covenants:

> **Non-compete.** During Employee's employment and for a period of one year following the termination of Employee's employment, Employee will not:
>
> A. Participate, personally or financially, directly or indirectly in competition with Company in the business of unregulated retail sales of natural gas, electricity, or enegery management services in Employee's former sales territory;
>
> B. Sell, attempt to sell, or service any customers with whom Employee had an attempted sales, sales or servicing relationship during the year prior to termination. This includes but is not limited to providing advice and consultation to such customers regarding purchase of natural gas, electricity, or energy management services and inducing Company's existing customers to cease doing business with Company. The obligations in subsection 4(A). and 4(B) above apply whether Employee is working as an individual; as a partner, agent, employee, salesperson of any entity, or as an officer or director or stockholder of any closely-held corporation

12. While working for MES, Ms. Miletello's supervisor was MES's Regional Sales Manager, Andy Alhadef ("Mr. Alhadef"). Mr. Alhadef routinely discriminated against Ms. Miletello based upon her sex. Mr. Alhadef continually made comments about how Ms. Miletello was a woman and questioned why Ms. Miletello was working and not at home taking care of her house and children. Mr. Alhadef regularly made derogatory comments about women in the workplace and how they did not belong in the workplace, thereby creating a hostile work environment for Ms. Miletello. In addition to the hostile work environment and sexual discrimination that she was suffering, Ms. Miletello was also being paid less than her male counterparts who were performing the same job duties. This was despite the fact that Ms. Miletello had more experience than her male counterparts and had worked in the industry for longer. Ms. Miletello complained to MES regarding the unequal pay; however, MES never investigated the

disparate pay based on sex and never took any action to correct the discrepancy. Upon information and belief, other female employees complained to MES about the sexual harassment and the hostile work environment that female employees were subjected to by Mr. Alhadef but MES failed to investigate and did not take any actions to correct the hostile work environment. Due to the continued harassment and discrimination that she was suffering at the hands of Mr. Alhadef, Ms. Miletello resigned from her employment with MES August 28, 2020.

13. On or about September 24, 2020, Mr. Alhadef sent a certified letter to Ms. Miletello demanding that she provide him with "an explanation of the steps [she is] taking and intend[s] to take, in [her] new role with Reliant Energy, to ensure compliance with the Confidential Information clause and the Non-Compete clause of [the] Employment Confidentiality Agreement (the "September Letter"), a true and correct copy of which is attached hereto as Exhibit "B."

14. In the September Letter, Mr. Alhadef suggests that Ms. Miletello is in violation of the Agreement, alleging that four days prior to her resignation, Miletello requested and received MES Confidential Information in the form of CoStar prospect lists for the areas of Bedford, Irving, and Fort Worth.[2]

15. On or about October 16, 2020, Mr. Alhadef sent a second certified letter to Miletello, also copying Miletello's current employer, Reliant Energy (the "October Letter"). A true and correct copy of the October Letter is attached hereto as Exhibit "C." In the October Letter, Mr. Alhadef alleges that Miletello is working for a competitor and soliciting customers of MES in breach and violation of the Agreement. Mr. Alhadef demands that Miletello cease her employment with Reliant Energy in her former sales territory[3] and that she "cease soliciting customers of MES

---

[2] Contrary to Mr. Alhadef's allegations, Ms. Miletello never *requested* the CoStar prospect lists that were provided by Mr. Alhadef. These lists were provided by Mr. Alhadef to every salesperson in the MES office for the purpose of making cold calls and were generated from publicly available real estate databases and used exclusively to make cold calls; there was absolutely nothing unique, proprietary or confidential about those lists.
[3] "Former sales territory" is not defined in the October Letter nor is it defined in the Agreement. During her employment with MES, Ms. Miletello was never assigned a sales territory.

that were customers or prospective customers while [she] worked at MES." Mr. Alhadef threatens that if Ms. Miletello does not cease her employment with Reliant Energy, then MES will proceed with filing a lawsuit against both Ms. Miletello and Reliant Energy for breach of contract and tortious interference and that MES will seek a temporary restraining order against them as well. Mr. Alhadef makes this threat in spite of the restrictive covenants being unenforceable against either Ms. Miletello or Reliant Energy. Mr. Alhadef also demands the following:

> Please provide a complete explanation to each of the following questions:
> (1) Have you contacted for business purposes any restricted customer (as defined in the Agreement) since leaving MES's employment?
> (2) If yes to (1), which restricted customer and what is the name of the key contact person?
> (3) For each contact with a restricted customer, what types of services did you sell or offer to sell to them?
> (4) Have you provided Reliant Energy with any business information belonging to MES?
> (5) If yes to (4), explain in detail the business information you provided to Reliant Energy.
> (6) If yes to (4), to whom did you provide the information?
> (7) Have you notified Reliant Energy of the terms of the Agreement? If yes, please provide us a copy of that notification and any response Reliant Energy gave to you.
> (8) Do you contend that any aspect of MES's factual investigation (as outlined above) is inaccurate, and if yes, please describe how.

16. Instead of responding to Mr. Alhadef directly, Ms. Miletello contacted Arik Sears, counsel for MES, via telephone on October 19, 2020, to discuss the allegations contained in Mr. Alhadef's prior letters. Based on her previous relationship with Mr. Alhadef, it was clear to Ms. Miletello that Mr. Alhadef had sent the previous letters to her for the purpose of harassing her and interfering with her current employment.

17. Following her call with Mr. Sears, Ms. Miletello emailed him to confirm in writing that she had not solicited MES business from any of her previous customers and did not intend to do so in the future. She also confirmed that she did not have any MES customer lists or confidential information in her possession. A true and correct copy of Ms. Miletello's October 19, 2020 email is attached hereto as Exhibit "D."

18. On or about November 7, 2020, Ms. Miletello engaged the undersigned counsel to represent her with regard to this matter. On or about November 9, 2020, Ms. Miletello's counsel sent correspondence to Mr. Sears stating that the Agreement is invalid or unenforceable under the Texas Covenants Not to Compete Act, Section l5.50. *et. seq.*, of the Texas Business & Commerce Code (the "Act"), because a) it was not supported by sufficient consideration, and b) the restrictive covenants in the Agreement are overbroad, vague, unclear, and not reasonably limited in geographic area and scope of activity to be restrained. A true and correct copy of counsel's November 9, 2020 letter is attached hereto as Exhibit "E."

19. On or about November 11, 2020, Mr. Sears sent correspondence on behalf of MES wherein it denied that the Agreement was overbroad but offered to reform the geographical restrictions to eleven counties in or near the DFW Metroplex. The amended restriction would still prohibit Ms. Miletello from participating "personally or financially… in the business of unregulated retail sales of natural gas, electricity, energy management services, in the Dallas-Fort Worth Metropolitan Area." A true and correct copy of counsel's November 11, 2020 letter is attached hereto as Exhibit "F."

## COUNT ONE: DISCRIMINATION IN VIOLATION OF TITLE VII

20. Plaintiff incorporates all allegations contained in the preceding paragraphs.

21. At all times set forth herein, MES was an "employer" and "respondent" as defined by Title VII.

22. Ms. Miletello is a female and thus is a member of a protected group within the meaning of Title VII of the Civil Rights Act of 1964.

23. As evidenced by its actions alleged herein, MES discriminated against Ms. Miletello by: (1) treating her less favorably than her male counterparts; and (2) failing or refusing

to pay her wages that were equal to her male counterparts performing the same work in the work group at MES because of her gender (female).

24.   MES failed to take prompt, effective remedial action intended to eliminate the harassing conduct when it knew or should have known of this illegal behavior.

25.   The effect of the practices complained of herein have deprived Ms. Miletello of equal terms, conditions, and privileges of employment and have otherwise affected her status as an employee because of her sex.

26.   The unlawful employment practices complained of herein were intentional or done with malice or reckless indifference to Ms. Miletello's federally protected rights to be free from discrimination and harassment based on sex in the workplace.

27.   As a direct result of the practices complained of herein, Ms. Miletello suffered mental and emotional distress.  Ms. Miletello seeks recovery of compensatory damages for her non-pecuniary losses including but her emotional pain, suffering, anxiety, depression, embarrassment, degradation, and humiliation.

## COUNT TWO: VIOLATIONS OF EQUAL PAY ACT

28.   Plaintiff incorporates all allegations contained in the preceding paragraphs.

29.   MES is subject to the Equal Pay Act.

30.   Ms. Miletello performed work in a position requiring skill, effort, and responsibility similar to that of her male counterparts, and in similar working conditions.

31.   As shown above, Ms. Miletello was paid less than her male counterparts that were performing substantially equal jobs requiring similar skills, effort, and responsibility as her position.

32.   The effect of the practices complained of above has been to deprive Ms. Miletello of equal pay to her male counterparts and she has suffered damages.

33. MES willfully violated the Equal Pay Act.

## COUNT THREE: TORTIOUS INTERFERENCE WITH EXISTING CONTRACT

34. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs.

35. Ms. Miletello and Reliant Energy entered into a valid and enforceable employment agreement for Ms. Miletello to be employed by Reliant Energy. MES was aware and had knowledge of the employment agreement between Ms. Miletello and Reliant Energy. MES willfully and intentionally interfered with the employment agreement by demanding that Ms. Miletello cease her employment with Reliant Energy.

36. As a result of this willful and intentional interference with the employment agreement between Ms. Miletello and Reliant Energy, Reliant Energy terminated Ms. Miletello's employment. Ms. Miletello has suffered actual damages in the form of lost wages and benefits and other losses.

## COUNT FOUR: DECLARATORY JUDGMENT

37. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs.

38. This controversy involves the parties' rights and responsibilities under the Agreement. Specifically, Ms. Miletello claims that the Agreement is unenforceable under Texas law, and moreover, that she is not in breach of the Agreement. Thus, there is an actual and justiciable controversy between the parties over which this Court is vested with the power to determine and declare under the Texas Declaratory Judgments Act, Chapter 37 of the Texas Civil Practice and Remedies Code.

39. Ms. Miletello seeks a declaration that the interpretation, validity and enforceability of the Agreement must be determined under the laws of the State of Texas, where Ms. Miletello

signed the Agreement and where Ms. Miletello lived and worked the entire time she was employed by MES. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 679-81 (1990).

40. Ms. Miletello seeks a declaration under Texas Uniform Declaratory Judgment Acts that the Agreement is invalid or unenforceable under the Texas Covenants Not to Compete Act, Section 15.50, *et. seq.*, of the Texas Business & Commerce Code (the "Act"), because it was not supported by sufficient consideration.

41. Ms. Miletello seeks a declaration that the Agreement is invalid or unenforceable under the Act because the restrictive covenants in the Agreement are overbroad, vague, unclear and not reasonably limited in geographic area and scope of activity to be restrained.

42. In addition to or in the alternative, Ms. Miletello seeks a declaration that she has not violated the Agreement.

## ATTORNEY'S FEES

43. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs.

44. Ms. Miletello has been required to employ the undersigned attorneys to represent her and to prosecute this action. Accordingly, Ms. Miletello seeks reimbursement of her reasonable and necessary attorney's fees from MES pursuant to Section 37.009 of the Texas Civil Practice & Remedies Code, Section 15.51(c) of the Texas Business & Commerce Code, and any other provision at law or in equity, for which she now sues.

## EXEMPLARY DAMAGES

45. As a consequence of the foregoing clear and convincing facts and the willful and malicious nature of the wrongs committed against Ms. Miletello, Ms. Miletello is entitled to exemplary damages in excess of the minimum jurisdictional limits of this Court.

## JURY DEMAND

46. Plaintiff demands trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

## PRAYER FOR RELIEF

For the reasons stated, Plaintiff Beth Miletello prays that on final hearing she be awarded judgment against Defendant MES Corp. for the following:

(1) A finding that Defendant discriminated against Plaintiff on the basis of her sex in violation of Title VII;

(2) A finding that Defendant violated the Equal Pay Act and for damages in the amount of wages Plaintiff was underpaid plus liquidated damages equal to 100% of her underpaid wages;

(3) A permanent injunction, enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in employment practices which are discriminatory in violation of Title VII;

(4) An order requiring Defendant to institute and carry out policies, practices, and programs which eradicate harassment and discrimination based on sex and prevent discrimination and harassment from occurring in the future, and which eradicate the effects of past and present sex discrimination and harassment;

(5) An order requiring Defendant to make Plaintiff whole by providing appropriate back pay with prejudgment interest and front pay in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendant's unlawful employment practices;

(6) An order requiring Defendant to make Plaintiff whole by providing compensation for pecuniary and non-pecuniary losses, including emotional pain, suffering, anxiety, depression, embarrassment, degradation, and humiliation;

(7) Plaintiff's actual damages for Defendant's tortious interference with Plaintiff's employment agreement;

(8) Reasonable and necessary attorney's fees;

(9) Exemplary damages;

(10) Pre-judgment interest at the highest rate allowed by law;

(11) Post-judgment interest at the highest rate allowed by law;

(12) The award of all costs; and

(13) All further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

**BROWN FOX, PLLC**

By: /s/ Brandi J. McKay
**BRANDI J. MCKAY**
State Bar No. 24075380
brandi@brownfoxlaw.com
**JONATHAN STRAIN**
State Bar No. 24070689
jon@brownfoxlaw.com
5550 Granite Pkwy, Suite 175
Plano, Texas 75024
(972) 707-1860 (Telephone)
(214) 327-5001 (Facsimile)

**ATTORNEYS FOR PLAINTIFF**